IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3125-FL

| | | |
|---|---|---|
| ROBERT JEREMY HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MELANIE ANDERSON and TYRINZO | ) | |
| HARRIS, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 58) and to seal records filed in support of same (DE 66). Plaintiff responded in opposition to the motion for summary judgment and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court denies the motion for summary judgment and grants the motion to seal.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint April 20, 2023, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants Melanie Anderson ("Anderson") and Tyrinzo Harris ("Harris"), correctional officers at the Eastern Correctional Institution ("ECI"), used excessive force against him in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks compensatory and punitive damages.

Following a period of discovery, and in accordance with the court's case management

order, defendants filed the instant motion for summary judgment. Defendants argue that the undisputed record evidence shows they did not use excessive force and that they are entitled to qualified immunity. In support of the motion, defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) their personal declarations together with pertinent Department of Adult Correction ("DAC") records related to the use of force incident; 2) plaintiff's medical records; and 3) plaintiff's administrative grievances addressing the use of force. As noted above, defendants also filed unopposed motion to seal plaintiff's medical records.

Plaintiff responded in opposition to the instant motion for summary judgment, arguing that genuine disputes of material fact preclude summary judgment, and that defendant is not entitled to qualified immunity. In support, plaintiff relies upon memorandum of law, opposing statement of facts, and appendix of exhibits thereto comprising his personal declaration and pertinent DAC records related to the use of force incident and other issues.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. Plaintiff's cell at ECI is connected to the outside walkway by a large steel door with a food tray slot (hereinafter, "food slot") that officers use to pass meals and other items to him. (Use of Force Video 3:15:17).[1] The cover to the food slot is accessible only to correctional officers in the walkway, meaning plaintiff does not have the ability to open or close it. (See id.). Plaintiff has

---

[1] The video recording was filed manually with the clerk of court (DE 68, 62). Citations to the video correspond to the timestamp appearing on the recording. With respect to all remaining record citations in this order, page numbers refer to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document

2

a history of throwing feces and urine on correctional officers when they open the food slot, which according to plaintiff is in response to the officers' derogatory verbal abuse. (Pl's Decl. (DE 71-1) at 1). Consistent with this prior behavior, on October 23, 2023, plaintiff threw a cup of feces and urine on defendant Anderson as she was attempting to give him a meal. (Use of Force Video 3:15:17; Pl's Decl. (DE 71-1) at 2; Anderson Decl. (DE 63) at 4).

The parties' accounts of this incident diverge at this stage. According to defendant Anderson, she instructed plaintiff to move away from the door multiple times, but he refused, and defendant Anderson then entered the door with her baton drawn. (Anderson Decl. (DE 63) at 3–4). Plaintiff responded by grabbing the baton and wrestling it away from her, and he then stated, "I'm going to kill you" while making aggressive gestures with the baton. (Id. at 4). Additional officers then responded and assisted in subduing plaintiff, who remained resistant throughout the encounter. (Id. at 3–4). Defendant Harris was among the responding officers, and in addition to confirming defendant Anderson's version of the incident, he reports that he assisted with subduing plaintiff and placed him in handcuffs while they were inside the cell. (Harris Decl. (DE 60-2) at 3–4).

Plaintiff provides a significantly different account. In sworn declaration, plaintiff attests that defendant Anderson sprayed him with pepper spray through the food slot after he threw urine and feces on her, and she then closed the cover such that plaintiff no longer posed immediate threat to the officers. (Pl's Decl. (DE 71-1) at 2). Nonetheless, and contrary to DAC policy governing cell extractions, defendant Anderson ordered unidentified officers to open plaintiff's cell door, and she entered the cell and struck plaintiff in the head three times, causing a two-centimeter laceration on his face. (Id.). Plaintiff acknowledges that he was able to "get the baton away" from

3

defendant Anderson after the first three blows, but he attests that he threw it out of reach as opposed to threatening defendant Anderson with it. (Id.). Defendant Harris then arrived with additional officers who continued to "attack" plaintiff. (Id.). According to plaintiff, defendant Harris then "choked me unconscious." (Id.).[2]

The video recording does not show the entire incident inside plaintiff's cell. (See generally Use of Force Video). Instead, it captures only the officers in the hallway and plaintiff at times through a window in the cell door. (Id.). The video confirms plaintiff threw feces and urine on defendant Anderson. (Id. at 3:15:17 to 3:15:30). Defendant Anderson then enters the cell with her baton drawn, raises it above her head, and makes a striking motion in plaintiff's direction while additional officers enter the cell. (Id. at 3:15:47 to 3:15:51). Approximately one minute later, defendant Anderson emerges from the cell, approaches the cart she was using to deliver meals, and then shoves a styrofoam meal package off the cart. (Id. at 3:16:34 to 3:16:39). Defendant Anderson turns around and goes back inside plaintiff's cell, where she remains for a few seconds, and then emerges being escorted out of the cell by other officers. (Id. at 3:16:39 to 3:16:58). As she leaves the area, defendant Anderson appears visibly agitated, and she strikes the stairwell with her baton in frustration. (Id. at 3:16:58 to 3:17:13).

**DISCUSSION**

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[2]      Plaintiff further attests that defendant Harris "assaulted" him during a subsequent decontamination shower, but he provides no further details about this alleged assault, and the court therefore does not address it further. (See Pl's Decl. (DE 71-1) at 2–3).

4

Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).  "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor."  Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."  Lovelace

v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.      Analysis

Defendants raise the affirmative defense of qualified immunity. The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233.

The court begins with the first prong. As to claims for excessive use of force, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the force used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 10 (1992).

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an

6

excessive force case, "the 'state of mind required is wantonness in the infliction of pain.'" <u>Brooks</u>

<u>v. Johnson</u>, 924 F.3d 104, 112 (4th Cir. 2019) (quoting <u>Iko v. Shreve</u>, 535 F.3d 225, 239 (4th Cir.

2008)). The relevant inquiry for the subjective prong is whether the force was applied "in a good

faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing

harm." <u>Whitley</u>, 475 U.S. at 320-21; <u>Brooks</u>, 924 F.3d at 113. The "question is not whether a

reasonable officer <u>could</u> have used force to maintain discipline, but whether these particular

officers <u>did</u> use force for that reason." <u>Brooks</u>, 924 F.3d at 113.

In analyzing the subjective prong, the court considers four factors "from

which . . . inferences may be drawn as to the officers' motives." <u>Id.</u> at 116. These factors are:

"(1) 'the need for application of force'; (2) 'the relationship between the need and the amount of

force that was used'; (3) the extent of any reasonably perceived threat that the application of force

was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'"

<u>Iko</u>, 535 F.3d at 239 (quoting <u>Whitley</u>, 475 U.S. at 321).

Here, adopting plaintiff's version of the facts, the court finds that judgment as a matter of

law is not warranted on this record. With respect to the objective prong, three strikes to plaintiff's

head with a baton, and choking plaintiff until he was rendered unconscious are nontrivial uses of

force. <u>See</u> <u>Alexander v. Connor</u>, 105 F.4th 174, 177, 182 (4th Cir. 2024).

Turning to the subjective prong, there was a need for application of force to maintain or

restore discipline, given that plaintiff had thrown feces and urine on defendant Anderson just prior

to the use of force. But plaintiff attests that defendant Anderson deployed pepper spray and then

closed the food slot to prevent further imminent attacks. (Pl's Decl. (DE 71-1) at 2). At that

point, the need for application of force was diminished because plaintiff was not an imminent

threat to the officers.

Defendants also were well within their rights to remove plaintiff from the cell and conduct necessary investigations/disciplinary proceedings related to his assault on defendant Anderson. See Brooks, 924 F.3d at 113 (stating officers act in good faith when they use force to "preserve internal order"). Plaintiff, however, attests that defendants' conduct went well beyond a standard cell extraction. Under plaintiff's version, defendant Anderson entered his cell and struck him three times on the head with a baton. (Pl's Decl. (DE 71-1) at 2). And drawing reasonable inferences in plaintiff's favor, that use of force is partially confirmed by the video recording. (Use of Force Video at 3:15:47 to 3:15:51).

The baton strikes may have been justified if plaintiff was resisting lawful orders when defendant Anderson entered the cell, or if he otherwise posed a threat to the officers. See Brooks, 924 F.3d at 113. But plaintiff specifically attests that he was not a threat to defendants after the food slot door was closed, (DE 71-1 at 2), and it is a reasonable inference to draw in his favor that he was not resisting or otherwise preparing to throw bodily fluids at the officers at the critical time when defendant Anderson elected to strike him with the baton. See Dean v. Jones, 984 F.3d 295, 305 (4th Cir. 2021) (requiring second by second analysis to determine whether use of force was justified because "the justification for using protective force expires at the very moment the threat is neutralized"). If plaintiff was not resisting at the time defendant Anderson struck him three times with a baton, a reasonable jury could find that defendant Anderson's use of force was designed to "wantonly punish" plaintiff for throwing the feces and urine on her, as opposed to a good faith effort to maintain or restore discipline. See Brooks, 924 F.3d at 114.

The court reaches the same conclusion under the Whitley factors as to defendant

8

Anderson's use of force. While some force was justified here for the reasons explained above, three baton strikes against an inmate who is not resisting is disproportionate to that need. See Brooks, 924 F.3d at 116–17. In addition, although the court acknowledges plaintiff's suggestion that he was not resistant would be difficult to credit if the court were sitting as fact finder, a reasonable juror could be persuaded that plaintiff did not present an imminent threat to the officers at the moment they entered the cell. Finally, while defendant Anderson did use pepper spray before entering plaintiff's cell, which could be construed as an effort to temper the severity of a forceful response, that would not preclude a finding of excessive force under Whitley if she entered plaintiff's cell and struck him with a baton three times when he posed no further threat of harm.

The same is true for defendant Harris. Assuming, as the court must in this procedural posture, that plaintiff was not resisting, then choking him till he became unconscious could not have amounted to a good faith effort to restore discipline under Whitley. See id. at 114–17.

Defendants argue that the use of force was "necessary and constitutional" in response to "plaintiff's act of throwing feces at defendant Anderson and the need to restrain him and extract him from his cell thereafter, and plaintiff's resistance to defendant Anderson and other officers involved in attempting to extract and transport plaintiff." (Def's Mem. (DE 61) at 12). As to the act of throwing feces, the fact that plaintiff committed a serious rule violation prior to the use of force is not dispositive. Instead, the court must examine what occurs after the initial rule violation to determine whether the officers acted with the permissible motive to restore order or induce compliance, or with the impermissible motive "to punish an inmate for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113. As to the cell extraction, the issue of whether plaintiff was resisting when the officers entered the cell is disputed for the reasons explained above.

9

Under plaintiff's version, and drawing the reasonable inferences that he no longer posed a threat and that he was not violating prison rules during the extraction, the court cannot enter judgment as a matter of law in favor of defendants on this ground. See id. at 114–17.

Defendants also urge the court to adopt their version of the facts, in which defendant Anderson merely brandished her baton, plaintiff immediately wrestled it away from her before she could have struck him, and plaintiff then proceeded to threaten to kill her and resist all efforts to restrain him. (See Anderson Decl. (DE 63)). Similarly, defendant Harris attests that he assisted in restraining plaintiff and placed him in handcuffs, implicitly denying plaintiff's assertion that he choked him until he lost consciousness. (See Harris Decl. (DE 60-2)). In the instant procedural posture, however, the court cannot analyze defendants' conduct under their own version of the facts. See, e.g., Brooks, 924 F.3d at 114.

Finally, defendants note that plaintiff's limited injury consisting primarily of a small laceration near his eye establishes that the use of force could not have been excessive. But the extent of plaintiff's injury is not dispositive, and given plaintiff's version of the incident together with analysis set forth above, the court is constrained to find that a reasonable jury could find the use of force was excessive notwithstanding the relatively minor injury. See Wilkins, 559 U.S. at 37–39.

In sum, genuine disputes of material fact preclude judgment as a matter of law on plaintiff's excessive force claim. Defendants therefore are not entitled to qualified immunity on the basis of the first prong of the doctrine. See Dean, 984 F.3d at 309.

With respect to the second, "clearly established" prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

10

officer that his conduct was unlawful in the situation he confronted." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 170 (4th Cir. 2016). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Kisela v. Hughes, 584 U.S. 100, 104 (2018). And court "must define the right in light of the specific context of the case, not as a broad general proposition." Younger, 79 F.4th at 385. This "do[es] not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Taking plaintiff's version of the facts as true, it was clearly established at the time of the incident here that officers cannot "maliciously use[] force against an inmate who" is not resisting the officers or otherwise refusing to comply with lawful directives, including by "kicking and punching" such an inmate. See Dean, 984 F.3d at 310–11; Brooks, 924 F.3d at 114–17; Thompson v. Commonwealth of Va., 878 F.3d 89, 102–05 (2017). Notably, in undertaking the clearly established analysis in this context, the court must assume defendants acted with malicious intent if plaintiff's evidence shows a genuine dispute on the issue. Dean, 984 F.3d at 310. As a result, defendants were on fair notice that their conduct violated plaintiff's clearly established right to be free from excessive force in the context here.

At this preliminary stage of the case, defendants are not entitled to qualified immunity. For the same reason, genuine disputes of material fact preclude entry of summary judgment on plaintiff's excessive force claim.

C.      Motion to Seal

Finally, defendants move to seal plaintiff's medical records filed in support of the instant

motion for summary judgment. The court has reviewed and considered the motion under the governing standard. <u>Doe v. Public Citizen</u>, 749 F.3d 246, 266–67, 272 (4th Cir. 2014). Plaintiff does not oppose sealing these records, and the public has received adequate notice of the motion to seal. Plaintiff's interest in the confidentiality of his medical records requires sealing in this instance. <u>See</u> Local Civil R. 26.1(a)(1).

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 58) is DENIED. Before entering a trial scheduling order, the court requires that the parties participate in a court-hosted settlement conference. Accordingly, pursuant to Local Alternative Dispute Rule 101.1, EDNC, this case is REFERRED to United States Magistrate Judge Robert T. Numbers, II, for a court-hosted settlement conference, for the purpose of resolving all remaining issues in dispute. The magistrate judge will notify the parties how he wishes to proceed. Any decision regarding appointment of counsel for plaintiff for purposes of the settlement conference shall be within the magistrate judge's discretion. In the event the parties do not reach a resolution of this action, further order regarding trial planning and scheduling will follow.

Defendants' motion to seal (DE 66) is GRANTED and the clerk shall maintain docket entry 65 under seal.

SO ORDERED, this the 31st day of March, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

12